**2016-1284**

# United States Court of Appeals
# for the Federal Circuit

HELSINN HEALTHCARE S.A., ROCHE PALO ALTO LLC,

*Plaintiffs-Appellees,*

*v.*

TEVA PHARMACEUTICALS USA, INC.,
TEVA PHARMACEUTICAL INDUSTRIES, LTD.,

*Defendants-Appellants.*

*Appeal from the United States District Court for the District of New Jersey in Nos. 3:11-cv-03962-MLC-DEA,3:11-cv-05579-MLC-DEA, 3:13-cv-05815-MLC-DEA, Judge Mary L. Cooper.*

## BRIEF OF AMICI CURIAE 42 INTELLECTUAL PROPERTY PROFESSORS IN SUPPORT OF APPELLANT

MARK A. LEMLEY
STANFORD LAW SCHOOL
559 Nathan Abbot Way
Stanford, CA 94305
(650) 723-4605
mlemley@law.stanford.edu

ROBERT P. MERGES
BERKELEY LAW SCHOOL
UNIVERSITY OF CALIFORNIA
Berkeley, CA 94720
(510) 643-6199
rmerges@law.berkeley.edu

*Counsel for Amici Curiae 42 Intellectual Property Professors*

MARCH 14, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA

No. 16-1284

Counsel for the Amici Curiae, 42 Intellectual Property Professors certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

      42 Intellectual Property Professors- See attached list.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      n/a

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      Mark A. Lemley, Stanford Law School

      Robert P. Merges, Berkeley Law School


| March 14, 2016 | /s/ Mark A. Lemley |
|---|---|
| Date | Signature of counsel |
| | Mark A. Lemley |
| | Printed Name of Counsel |

i

**Certificate of Interest Question 1 continued[1]**

Professor John R. Allison
McCombs Graduate School of Business
University of Texas at Austin

Professor Clark Asay
Brigham Young University Law School

Professor Margo A. Bagley
University of Virginia School of Law

Professor Ann Bartow
University of New Hampshire School of Law

Professor Jeremy Bock
University of Memphis Cecil Humphreys School of Law

Professor Dan L. Burk
University of California at Irvine School of Law

Professor Michael A. Carrier
Rutgers Law School

Professor Andrew Chin
University of North Carolina School of Law

Professor Ralph D. Clifford
University of Massachusetts School of Law

Professor Kevin Collins
Washington University Law School

Professor Christopher A. Cotropia
University of Richmond School of Law

---

[1]   The undersigned sign in their individual capacity.  Institutional names provided
for affiliation purposes only.

Professor Thomas Cotter
University of Minnesota School of Law

Professor Robin Feldman
University of California Hastings College of the Law

Professor William Gallagher
Golden Gate University Law School

Professor Shubha Ghosh
University of Wisconsin School of Law

Professor Yaniv Heled
Georgia State University College of Law

Professor Timothy Holbrook
Emory University School of Law

Professor Camilla Hrdy
University of Akron School of Law (effective 6/16)
Fellow, University of Pennsylvania School of Law

Professor Dennis S. Karjala
Arizona State University Sandra Day O'Connor College of Law

Professor Dmitry Karshtedt
George Washington University Law School

Professor Amy L. Landers
Drexel University Thomas R. Kline School of Law

Professor Mark A. Lemley
Stanford Law School

Professor Lee Ann Lockridge
Louisiana State University Law School

Professor Brian J. Love
Santa Clara University School of Law

Professor Stephen McJohn
Suffolk University Law School

Professor Mark P. McKenna
Notre Dame Law School

Professor Robert P. Merges
Berkeley Law School

Professor Joseph Scott Miller
University of Georgia School of Law

Professor Mike Mireles
McGeorge School of Law

Professor Craig Allan Nard
Case Western Reserve University School of Law

Professor Tyler T. Ochoa
Santa Clara University School of Law

Professor David S. Olson
Boston College Law School

Professor Michael Risch
Villanova University Charles Widger Law School

Professor Sharon Sandeen
Mitchell Hamline School of Law

Professor Joshua D. Sarnoff
DePaul University College of Law

Professor Katherine J. Strandburg
New York University School of Law

Professor Kurt M. Saunders
California State University, Northridge School of Business

Professor Sean B. Seymore
Vanderbilt University Law School

Professor Ted Sichelman
University of San Diego School of Law

Professor Brenda Simon
Thomas Jefferson Law School

Professor David O. Taylor
SMU Dedman School of Law

Professor R. Polk Wagner
University of Pennsylvania School of Law

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES ................................................................ vii

INTEREST OF AMICI........................................................................ 1

SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ..................................................................................... 2

   I.    The District Court's Holding Is Inconsistent with the Language
        and Structure of the AIA ............................................................ 2

  II.    The Legislative History Does Not Support a New "Publicness"
        Requirement .............................................................................. 5

 III.    The Addition of "Otherwise Available to the Public" Should Not
        Change This Result .................................................................... 9

        A. The District Court's Approach Would Radically Rewrite the
           Law of Prior Art ................................................................. 9

        B. The Terms "Public Use" and "On Sale" Have a Settled
           Meaning This Court Should Not Disturb ........................................ 18

        C. So What *Does* "Otherwise Available to the Public" Mean?............. 20

CONCLUSION .................................................................................. 22

APPENDIX A: List of Signatories ................................................. Appx1

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Air Wis. Airlines Corp. v. Hoeper,*
134 S. Ct. 852 (2014) ........................................................................20

*Barnhart v. Sigmon Coal Co.,*
534 U.S. 438 (2002) ...........................................................................7

*Buildex Inc. v. Kason Indus., Inc.,*
849 F.2d 1461 (Fed. Cir. 1988) ........................................................14

*Conmar Prods. Corp. v. Universal Slide Fastener Co.,*
172 F.2d 150 (2d Cir. 1949) .............................................................12

*D.L. Auld Co. v. Chroma Graphics Corp.,*
714 F.2d 1144 (Fed. Cir. 1983) ........................................................14

*Egbert v. Lippmann,*
104 U.S. 333 (1881) .................................................................. 12, 13

*Elizabeth v. Pavement Co.,*
97 U.S. 126 (1877) ............................................................................17

*FAA v. Cooper,*
132 S. Ct. 1441 (2012) ......................................................................20

*Freytag v. Commissioner,*
501 U.S. 868 (1991) ...........................................................................3

*Gemmy Indus. Corp. v. Chrisha Creations Ltd.,*
452 F.3d 1353 (Fed. Cir. 2006) ........................................................16

*GPX Int'l Tire Corp. v. United States,*
666 F.3d 732 (Fed. Cir. 2011) ..........................................................19

*Group One, Ltd. v. Hallmark Cards, Inc.,*
   254 F.3d 1041 (Fed. Cir. 2001)..........................................................................16

*Gustafson v. Alloyd Co.,*
   513 U.S. 561 (1995).......................................................................................3

*Hazeltine Research, Inc. v. Brenner,*
   382 U.S. 252 (1965).....................................................................................12

*In re Hafner,*
   410 F.2d 1403 (C.C.P.A. 1969) ...................................................................18

*In re Hall,*
   781 F.2d 897 (Fed. Cir. 1986)................................................................ 11, 21

*In re Kaplan,*
   789 F.2d 1574 (Fed. Cir. 1986)....................................................................18

*In re Klopfenstein,*
   380 F.3d 1345 (Fed. Cir. 2004)............................................................ 10, 16

*In re Kollar,*
   286 F.3d 1326 (Fed. Cir. 2002)....................................................................16

*In re* Vogel,
   422 F.2d 438, 441–42 (C.C.P.A. 1970) ........................................................18

*Kinzebaw v. Deere & Co.,*
   741 F.2d 383 (Fed. Cir. 1984)................................................................ 13-14

*Lough v. Brunswick Corp.,*
   86 F.3d 1113 (Fed. Cir. 1996).....................................................................13

*Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co.,*
   153 F.2d 516 (2d Cir. 1946)............................................. 5, 6, 7, 9, 11, 13, 14, 17

*Microsoft Corp. v. i4i Ltd. P'ship,*
   131 S. Ct. 2238  (2011) ..............................................................................19

*Mims v. Arrow Fin. Servs., LLC,*
    132 S. Ct. 740 (2012) ..........................................................................7

*Moore v. United States,*
    194 U.S.P.Q. 428, 1977 WL 22793 (Ct. Cl. 1977)............................14

*Nationwide Mut. Ins. Co. v. Darden,*
    503 U.S. 318 (1992) ..........................................................................19

*Neder v. United States,*
    527 U.S. 1 (1999) ..............................................................................19

*OddzOn Products v. Just Toys,*
    122 F.3d 1396 (Fed. Cir. 1997)........................................................12

*Patriotic Veterans, Inc. v. Indiana,*
    736 F.3d 1041 (7th Cir. 2013) ...........................................................7

*Pennock v. Dialogue,*
    27 U.S. (2 Pet.) 1 (1829) ..................................................................15

*Pfaff v. Wells Elec., Inc.,*
    525 U.S. 55 (1998).................................................................... 14, 16

*Priority and Novelty Under the AIA,*
    27 Berkeley Tech. L.J. 1023 (2012) .................................................11

*Special Devices, Inc. v. OEA, Inc.,*
    270 F.3d 1353 (Fed. Cir. 2002)........................................................14

*Standard Oil Co. of N.J. v. United States,*
    221 U.S. 1 (1911)..............................................................................19

*Suffolk Techs., LLC v. AOL Inc.,*
    752 F.3d 1358 (Fed. Cir. 2014)........................................................16

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001)..............................................................................6

*United States v. Alaska,*
   521 U.S. 1 (1997).................................................................................3

*Voter Verified, Inc. v. Premier Election Solutions, Inc.,*
   698 F.3d 1374 (Fed. Cir. 2012)........................................................16

*W.L. Gore & Assocs. v. Garlock, Inc.,*
   721 F.2d 1540 (Fed. Cir. 1983)........................................................14

*White Cap Co. v. Owens-Ill. Glass Co.,*
   203 F.2d 694 (6th Cir. 1953) ...........................................................12

*Wis. Educ. Ass'n Council v. Walker,*
   705 F.3d 640 (7th Cir. 2013) .............................................................7

## Statutes

5 Stat. 117 (1836)..................................................................................18

35 U.S.C. §102(f) (2000) ......................................................................12

35 U.S.C. §102(a) ...................................................................................9

35 U.S.C. §102(a)(1)(2012) ....................................................................8

35 U.S.C. §103(a) (2000).......................................................................12

AIA § 102................................................................................... *passim*

## Other Authorities

2 Donald S. Chisum, Chisum on Patents § 6.02[5][b] (2014)...........14

57 Cong. Rec. H4424 (daily ed. June 22, 2011) (statement of Rep. Zoe Lofgren)..8

154 Cong. Rec. 22,631 (2008) (statement of Sen. Jon Kyl) ....................5

157 Cong. Rec. 3415 (2011) (statement of Sen. Patrick Leahy) .............7

157 Cong. Rec. 3423–24 (2011) (statement of Sen. Jon Kyl)..................7

Daniel Taskalos, *Metallizing Engineering's Forfeiture Doctrine After
    the America Invents Act*, 16 Stan. Tech. L. Rev. 657 (2013) ................9

H.R. 1908, 110th Cong.
    (as introduced in House of Representatives, Apr. 18, 2007)...............8

*H.R. 1249—America Invents Act*, House of Representatives
    Committee on Rules, http://rules.house.gov/bill/112/hr-1249,
    archived at http://perma.cc/W5S-FTRW ................................8

H.R. 2795, 109th Cong. § 3 (2005) ........................................5

H.R. Rep. No. 110-314 (2007)...............................................8

H.R. Rep. No. 112-98 (2011)................................................8

Harold C. Wegner, The 2011 Patent Law:
    Law And Practice 138 (4th ed. 2011)..................................7

Mark A. Lemley, *Does Public Use Mean the Same Thing It Did Last Year?*,
    93 Tex. L. Rev. 1119 (2014)...........................................9

Mark A. Lemley, *Ready for Patenting*, 96 B.U. L. Rev.
    __ (forthcoming 2016), available at
    http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2613696...........17

Robert P. Merges, *Priority and Novelty Under the AIA*,
    27 Berkeley Tech. L.J. 1023 (2012) ..................................11

S. Rep. No. 111-18 (2009) ................................................6

## INTEREST OF AMICI

Amici are professors who teach and write about patent law at schools throughout the United States. We have no personal interest in the outcome of this case, but have a professional interest in seeing that the patent law develops in a clear way that serves its constitutional purpose.[2]

## SUMMARY OF ARGUMENT

The key legal question in the case is simple: did Congress mean to sweep away scores of established cases under the 1952 Act even though it reenacted language unchanged since 1870, merely because it added the phrase "or otherwise available to the public" to the list of prior art categories in the new AIA section 102? We think not. We have three primary reasons. First, the district court's reading is inconsistent with the language and structure of the AIA. Second, it is inconsistent with Congressional intent in readopting the "on sale" and "public use" language in section 102. Finally, it would sweep away scores of cases decided over two centuries and radically rewrite a host of patent doctrines.

---

[2]   No one other than the undersigned drafted any portion of this brief or contributed any money towards its preparation or filing. Both appellants and appellees have consented to the filing of this brief.

1

**ARGUMENT**

## I.    The District Court's Holding Is Inconsistent with the Language and Structure of the AIA

First, the overall structure of AIA § 102 is inconsistent with the idea that Congress meant to eliminate all non-public categories of prior art. In particular, the crucial distinction between "disclosures" and "*public* disclosures" in AIA § 102(b)(1) demonstrates that not all prior art events ("disclosures") are public disclosures.[3] They can't be: otherwise the explicitly drafted "public disclosure" provision, giving inventors a grace period even as against third party prior art, becomes quite problematic. If all prior art events – all "disclosures" under AIA § 102(b) – are already public disclosures, the word "publicly" in front of the word "disclosed" in the third party grace period of AIA § 102(b)(1)(B) becomes completely redundant.  This conflicts with the well-known canon that all words in a statute are presumed to have meaning, and interpretations that render a word redundant are to be disfavored.  *United States v. Alaska*, 521 U.S. 1, 59 (1997)

_____

[3] It is crystal clear from the text of AIA § 102 that the term "disclosure" in § 102(b)(1) – the grace period provision – refers to any prior art reference in any of the categories of prior art listed in AIA § 102(a):

> A *disclosure* made 1 year or less before the effective filing date of a claimed invention *shall not be prior art* to the claimed invention under subsection (a)(1) if . . . .

The heading for § 102(a), listing the types of references under the AIA, reads: "Novelty; Prior Art."

("The Court will avoid an interpretation of a statute that 'renders some words altogether redundant.'" (*quoting Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995)); *Freytag v. Commissioner,* 501 U.S. 868, 877 (1991) ("Statutory interpretations that "render superfluous other provisions in the same enactment" are strongly disfavored.").

Interpreting disclosure to be equivalent to public disclosure defies the logic and structure of § 102(b)(1)(A) and (B). Congress included this language in AIA § 102(b)(1)(B): "the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor."  If one reads the term "public" out of that sentence, it makes no sense at all.

If disclosure is already equivalent to public disclosure, the third party prior art covered in AIA § 102(b)(1)(B) could have been much more easily handled by appending one sentence to AIA § 102(b)(1)(A). After the current text of (b)(1)(A), Congress could have said simply "An inventor's disclosure also eliminates prior art status for subject matter disclosed after the inventor's disclosure." Instead, it provided a completely separate rule for third party disclosures. When we give the phrase "public disclosure" full meaning, and distinguish it from a mere or routine disclosure, this makes sense. For an inventor to remove third-party events from the prior art requires something more than a simple prior disclosure: it requires a public disclosure. The "super" grace period of § 102(b)(1)(B) (i.e., eliminating

3

third party prior art) is "earned" by an act that goes beyond mere prior disclosure by the inventor: it requires a public disclosure. This interpretation is logical, and it recognizes the distinction between inventor's-own and third party prior art prior to filing. Section (b)(1)(B) is a more significant grace period, so it requires a more significant act to earn it.

The purpose of AIA § 102(b) is to provide exceptions to the general rule of AIA § 102(a), the new first-to-file novelty rule. The exceptions are in the form of a grace period. In drafting AIA § 102(b), Congress made "disclosures" (i.e., prior art events) the subject of the sentence. The exception applies to *disclosures*. There are two types of disclosures that qualify for exceptions: (A) inventor's-own (of "first party") disclosures; and (B) third party disclosures. The exception in A says inventor's-own disclosures are not part of the prior art (if made within one year of filing). Exception B says third party disclosures (stated passively, as "the subject matter disclosed" – with no limitation on who is doing the disclosing) are also not part of the prior art, if made within one year of filing – and *if preceded by a **public disclosure*** by the inventor. The sense that Congress understood these to be quite distinct situations, requiring quite distinct rules, is reflected in the header to subsection (b)(1): it says *exceptions*, not "exception." An interpretation that preserves the distinctness of the two exceptions better reflects Congress's choice of language here.

4

Put another way, Congress broke third party disclosures out into a separate subsection of the statute. It provided a distinct rule with respect to these disclosures: that they are eliminated from the prior art only if the later-filing inventor first made a special type of disclosure, a public disclosure.

There is no escaping the fact that the distinct court opinion in the *Helsinn* case simply reads the word "public" right out of the statute. In doing so, it renders the language and structure of section 102 nonsensical. This it cannot do.

## II.    The Legislative History Does Not Support a New "Publicness" Requirement

The history of the drafting of the AIA suggests that it did not repeal *Metallizing*. The original bill introduced in Congress in 2005 would have eliminated the categories of public use and on sale altogether, defining "prior art" as only things "patented, described in a printed publication, or otherwise publicly known." H.R. 2795, 109th Cong. § 3 (2005). Senator Kyl expressly noted that the purpose of dropping public use and on sale in his bill was to "eliminat[e] confidential sales and other secret activities as grounds for invalidity."[4]

But that language was not the language Congress adopted. During the course of six years of Congressional debate, Congress added the terms "public use"

---

4. 154 CONG. REC. 22,631 (2008) (statement of Sen. Jon Kyl). That statement was in reference to a 2008 Senate bill that went back to the original 2005 House language, but which was ultimately not adopted.

5

and "on sale" back into the definition of prior art. Indeed, Senator Kyl and two others objected to adding that language because they said it would add secret uses back to the definition of prior art.[5] To limit those terms only to uses and sales that were publicly known would render that decision a nullity—the statute would have precisely the same effect as if the terms "public use" and "on sale" were excluded altogether. An interpretation of a statute that renders a portion of it a nullity is strongly disfavored.[6] That is particularly true when the terms were specifically added to the bill during the legislative process.

Against the considerable weight of this statutory interpretation, those who claim the AIA overruled *Metallizing* offer only a relatively weak form of legislative history—the statements of individual Senators. The basis of the argument is a "colloquy" on the floor of the Senate the day *after* the Senate had passed the AIA, in which Senator Leahy expressed his view to Senator Hatch that "subsection 102(a) was drafted in part to do away with precedent under current law that private offers for sale or private uses or secret processes practiced in the

---

5. *See* S. REP. NO. 111-18, at 60 (2009) (supporting removing language from the Patent Reform Act of 2009 relating to patent-forfeiture provisions "that apply only to non-public prior art").

6. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

United States . . . may be deemed patent-defeating prior art."[7]  Senator Kyl made

similar statements about his interpretation of the statute the day before.[8] This

prepackaged "conversation" enabled certain representatives to express their view

that *Metallizing* should be overruled.  But the floor statement of two members of

Congress articulating their personal intent, unexpressed in the statute, to overrule

*Metallizing* should not change settled law.  While the use of any legislative history

is suspect to some, the statements of individual members of Congress on the floor

are particularly weak legislative history because there is no reason to think that

they speak for anyone but themselves. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct.

740, 752 (2012) ("[T]he views of a single legislator, even a bill's sponsor, are not

controlling"); *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 457 (2002) (""Floor

statements from two Senators cannot amend the clear and unambiguous language

of a statute."); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1053 (7th Cir.

2013) ("[T]he comments of individual senators do not necessarily reflect

Congress's intent in enacting any particular piece of legislation."); *Wis. Educ.*

*Ass'n Council v. Walker*, 705 F.3d 640, 652 (7th Cir. 2013) (stating that a single

---

7. 157 CONG. REC. 3415 (2011) (statement of Sen. Patrick Leahy).  Senator Hatch did not respond to this point, instead turning to different issues. *Id.* at 3415–16.  Hal Wegner has called this "*faux* legislative history" because it was created after the fact to explain a bill that had already passed.  HAROLD C. WEGNER, THE 2011 PATENT LAW: LAW AND PRACTICE 138 (4th ed. 2011).

8. 157 CONG. REC. 3423–24 (2011) (statement of Sen. Jon Kyl).

comment "reveals little of the intent of the legislature as a whole").  That is

particularly true here because other members of Congress, notably Representative

Zoe Lofgren, publicly took a different view.[9]

A somewhat stronger form of legislative history lies in the official reports

written by the Committee that advanced the legislation to the floor.[10]  Those

reports, unlike a colloquy, at least purport to speak for the Committee as a whole.

Notably, the House Report accompanying the 2007 bill—the one that reintroduced

the "public use" and "on sale" language—expresses an intent to adopt the "public

use" and "on sale" language "primarily because of how the terms 'in public use'

and 'on sale' have been interpreted by the courts."  H.R. REP. NO. 110-314, at 57

(2007).  That—coupled with the fact that the bill changed to add those terms over

---

9. 157 CONG. REC. H4424 (daily ed. June 22, 2011) (statement of Rep. Zoe Lofgren).  Representative Lofgren sought to submit an amendment to H.R. 1249 on the floor of the House to clarify that all existing categories of prior art were subsumed in the term "disclosure," but the Rules Committee would not allow the amendment to be presented, so there was no opportunity for Congress to discuss or vote on the question.  *H.R. 1249—America Invents Act*, HOUSE OF REPRESENTATIVES COMMITTEE ON RULES, http://rules.house.gov/bill/112/hr-1249, *archived at* http://perma.cc/W5S-FTRW.

10. Courts are generally hesitant about looking at the legislative history of a bill from a prior Congress.  But here there is a more compelling case for looking at it because the only report for the enacted AIA states "the bill is a 6-year work in progress" and cites hearings from 2005 to 2010. H.R. REP. NO. 112-98, at 57 (2011).  That is particularly true where, as here, the final statutory language was settled on in the 2007 term and did not change thereafter.  *Compare* H.R. 1908, 110th Cong. (as introduced in House of Representatives, Apr. 18, 2007), *with* 35 U.S.C. § 102(a)(1) (2012).

the objections of the Senators who wanted to overrule *Metallizing*—suggests that the best reading of that history is that Congress did not deliberately throw out the definitions of "public use" and "on sale" as they have existed for decades, even if a few Senators wished it were otherwise. *See* Mark A. Lemley, *Does Public Use Mean the Same Thing It Did Last Year?*, 93 **Tex. L. Rev.** 1119, 1129-30 (2014) (reaching this conclusion); Daniel Taskalos, Metallizing Engineering*'s Forfeiture Doctrine After the America Invents Act*, 16 STAN. TECH. L. REV. 657, 685–93 (2013) (same).

### III.    The Addition of "Otherwise Available to the Public" Should Not Change This Result

#### A. The District Court's Approach Would Radically Rewrite the Law of Prior Art

The district court's reading of AIA § 102(a) will cause all manner of mischief. As just stated, it eliminates the disclosure/public disclosure distinction that is so central to AIA § 102(b)(1). It also attributes a quite radical intent and effect to the new prior art provision in the AIA: it would sweep away scores of cases, accumulated over two centuries, defining in great detail each of the specific categories of prior art listed in AIA § 102(a). Opinions by giants in the patent field, from Joseph Story to Learned Hand to Giles Rich – gone, by virtue of one add-on phrase in the new statute. With no legislative hearings on this radical move, despite Congress's decision to reenact the very language that has been in the Patent Act for

a century without alteration, without even any legislative history describing why the definition of prior art is being changed so radically, we are to assume that Congress just decided on a major sea change in this very old and very much relied-upon body of law? That seems highly unlikely.

In a vacuum, the district court's reading of "or otherwise available to the public" is plausible. But to see why it is so disruptive, it is helpful to lay out the details of this interpretation. Under the district court's reading, the statute as written is taken to mean, in effect:

> (1) the claimed invention was [a] patented [in a manner available to the public], [b] described in a printed publication [in a manner available to the public] , or [c] in public use [in a manner available to the public], [d] on sale [in a manner available to the public], or [e] otherwise available to the public . . . .

35 USC § 102(a)(1) (with insertions and annotations).

How much change would this reading work in existing caselaw? We consider this by prior art reference types, annotated [a] through [e]. Patents and printed publications ([a] and [b]) would not change much if at all. A patent is, by its nature, open to the public; the word "patent" has the meaning "open or lying open." And under a long line of cases, a "printed publication" is defined as a reference that is accessible to the public. *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004) ("[T]he key inquiry is whether or not a reference has been made 'publicly accessible.'"). Perhaps the advent of the new statute would cause courts

to revisit "borderline" cases, such as *In re Hall*, 781 F.2d 897 (Fed. Cir. 1986), in which a single copy of a graduate thesis in one library in Germany was ruled a "printed publication." But in general it is quite plausible that the law under the 1952 Act would for the most part carry forward cleanly under the district court's reading of AIA § 102(a).

Not so for prior art references [c] and [d]: public use and on sale prior art. The district court reading of AIA § 102(a) would result in the overturning of a huge body of case law for both types of references. In particular, the AIA would be found to have revoked cases in three major areas: (1) "noninforming public use" cases, where an invention is used in public but in a way that is not ascertainable by (and hence arguably not "available to") the public; (2) "output of a patented machine or process" cases, such as *Metallizing Engineering*; and (3) secret, confidential, and nonpublic sales transactions, which under the on sale cases cover the vast majority of on sale events.[11]

_____

[11] It might be tempting to conclude that the word "disclosure" in AIA § 102(b) implies a degree of widespread access, but this is not right. A disclosure can be limited to a very few people yet still be a disclosure. We know this, for example, because of the widespread use of "nondisclosure agreements" in trade secret law, which prohibit unauthorized transfers of information to third parties no matter how secret or limited. See generally Robert P. Merges, *Priority and Novelty Under the AIA*, 27 **Berkeley Tech. L.J.** 1023, 1036 (2012) ("There is room . . . for the idea of a 'secret disclosure'—a disclosure that goes beyond absolute nondisclosure but not nearly all the way to wide-open and free dissemination.").

There are many noninforming public use cases. The classic is *Egbert v. Lippmann*, 104 U.S. 333 (1881). The inventor's corset stay, worn inside his fiance's well-covered corset (it was 1881; pre-Lady Gaga) was used without explicit restriction for over 10 years – a public use, according to the Supreme

---

Indeed, the term "disclosure" has long been understood by patent lawyers and this Court as synonymous with "prior art references." Section 103 of the 1952 Patent Act said that "[a] patent may not be obtained, though the invention is not identically *disclosed or described as set forth in section 102 of this title . . .*" 35 U.S.C. §103(a) (2000). That statute uses the term "disclosed" to refer to everything that was prior art under the public use and on sale prongs in the 1952 Act, including non-public art. This Court's opinions similarly use the term "disclosure" expansively to refer to all prior art. Thus, in *OddzOn Products v. Just Toys*, the court addressed whether a § 102(f) confidential disclosure could also be used as prior art under § 103. 122 F.3d 1396 (Fed. Cir. 1997). OddzOn Products argued that "because these disclosures are not known to the public, they do not possess the usual hallmark of prior art, which is that they provide actual or constructive public knowledge." *Id.* at 1401. This Court rejected that argument, concluding that derivation under old section § 102(f) was prior art that could be used for an obviousness inquiry. *Id.* at 1401-02. Notably, both the court and the party arguing against prior art status for secret information used the term "disclosures" to refer to that secret prior art. That usage by both courts and litigants is consistent with the idea that "disclosures" in patent law has traditionally meant "anything that qualifies as a prior art reference," not a particular level of publicness. Other cases use the term consistently. Thus, in *Conmar Prods. Corp. v. Universal Slide Fastener Co.*, 172 F.2d 150 (2d Cir. 1949), Judge Hand referred to a putative piece of prior art as "Poux's disclosure" even though it was not in fact public as of the priority date. *Id.* at 152–53. Similarly, *White Cap Co. v. Owens-Ill. Glass Co.*, 203 F.2d 694 (6th Cir. 1953), speaks of a rejected patent application that never became public, and therefore did not qualify as prior art, as the "Armstrong disclosure." *Id.* at 696; *see also Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252, 253, 256 (1965) (finding a filed patent application to be prior art for § 103 purposes even though "its disclosures were secret and not known to the public").

Court. Modern cases such as *Lough v. Brunswick Corp.*, 86 F.3d 1113 (Fed. Cir. 1996) (involving the unrestricted use of inboard-outboard boat engines containing an unobservable internal engine seal) follow *Egbert*. All these cases are arguably swept away by the district court's interpretation. It is impossible to say how many cases would be eliminated, though the main holding of *Egbert* has, according to Westlaw, been cited 45 times for the proposition that it was a public use. The upshot is the same regardless: a well-settled rule of law, established for over 125 years, has been swept away. Until the contours of the new "[c] public use [in a manner available to the public]" type of prior art are established, uncertainty reigns.

There is a second category of public use case wiped away by the district court holding: those where the output of a patented machine is used publicly. The classic here is *Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516 (2d Cir. 1946). In *Metallizing Engineering*, Judge Learned Hand identified the crucial policy behind a strict reading of the public use bar: "[I]f [an inventor] goes beyond that period of probation, he forfeits his right regardless of how little the public may have learned about the invention . . . ." Id., at 520. Again, it is difficult to say with precision how much precedent the court's opinion erases; but the main holding in *Metallizing* has been cited in 30 cases and explicitly adopted by this Court in numerous cases. *See, e.g., Kinzebaw v. Deere & Co.*, 741

F.2d 383, 390 (Fed. Cir. 1984); *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983); *see also Moore v. United States*, 194 U.S.P.Q. 423, 428, 1977 WL 22793, at \*5–6 (Ct. Cl. 1977) (endorsing *Metallizing*); 2 DONALD S. CHISUM, CHISUM ON PATENTS § 6.02[5][b], at 6–61 (2014) ("[I]t is now well established that commercial exploitation by the inventor of a machine or process constitutes a public use even though the machine or process is held secret.").

A final category of cases the district court sweeps away are "on sale" cases where the sale or offer is secret, confidential or non-public. Because public availability has never been a requirement in on sale cases, it is difficult to say with precision how many cases are affected. It is quite clear, however, that the confidential nature of a sale under the 1952 Act is irrelevant in determining whether the on sale bar applies. *E.g., Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1357 (Fed. Cir. 2002) ("the on-sale bar would apply even if a patentee's commercial activities took place in secret."); *Buildex Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1464 (Fed. Cir. 1988) (holding that a firm offer sent to prospective purchaser was an "on sale" event, despite the fact that the offer was marked "confidential"); *Pfaff v. Wells Elec., Inc*., 525 U.S. 55 (1998) (nowhere mentioning whether the purchase order that constituted the on sale event was ever made public; presumably it was not).  The district court here explicitly required that a sale be

14

public to be prior art, not only ignoring that history but ignoring the plain language of the term "on sale" itself, which requires no such publication.

In the cases under [c] and [d], public use and on sale prior art, the lack of any "publicness" requirement under the 1952 Act makes sense in light of the original policy rationale for the statutory bars. Going all the way back to the foundational case of *Pennock v. Dialogue*, 27 U.S. (2 Pet.) 1 (1829) (Story, J.), the rationale for the statutory bars has been to prevent the extension of the patent monopoly. Indeed, in the *Pennock* case itself, Justice Story specifically mentioned the *lack* of comprehensive public disclosure during the pre-filing exploitation of an invention:

> If an inventor should be permitted to hold back from the knowledge of the public the secrets of his invention; if he should, for a long period of years, retain the monopoly, and make and sell his invention publicly; and thus gather the whole profits of it, relying upon his superior skill and knowledge of the structure; and then, and then only, when the danger of competition should force him to procure the exclusive right, he should be allowed to take out a patent, and thus exclude the public from any further use, than what should be derived under it, during his fourteen years; it would materially retard the progress of science and the useful arts; and give a premium to those who should be least prompt to communicate their discoveries.

27 U.S. at 10.

Further, were this Court to revisit the public aspect of "on sale," who is to say it should not also revisit the detailed case law on what constitutes an offer for

sale,[12] or the rule that the on sale bar is triggered when the invention is ready for patenting, even if it hasn't yet been built.[13] None of those rules flows inexorably from the meaning of the words "on sale," and if the "on sale" of the AIA is different than the "on sale" of the 1952 Act, all those interpretations are open to question. So too are the obviousness cases that depend on these categories of prior art.

Nor does the uncertainty end there. Patent law is full of terms that have taken on a judicial gloss that departs alters what the terms might mean to the untutored. A "printed publication" does not by its terms include a website or a PowerPoint presentation, but courts have interpreted both to fit within the meaning of the term.[14] If reenacting old statutory language is an invitation to revisit the meaning of that language, we will lose all the benefit of more than a century of

---

12. *See, e.g.*, *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1359–60 (Fed. Cir. 2006) (holding that statement by patentee's president did not establish date of first sale for purposes of on sale bar); *In re Kollar*, 286 F.3d 1326, 1333 (Fed. Cir. 2002) (holding that license agreement was not a "sale"); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) (holding that "[o]nly an offer which rises to the level of a commercial offer for sale . . . constitutes an offer for sale under" the on sale bar).

13. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67–68 (1998).

14. *E.g.*, *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364–65 (Fed. Cir. 2014) (holding that unindexed Usenet newsgroup posting is a printed publication); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1379–80 (Fed. Cir. 2012) (holding that unindexed web page is a printed publication); *In re Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004) (holding that a PowerPoint presentation at a conference is a printed publication).

case law interpreting those terms.  We will have to start over, with no guarantee that the settled meaning of these old terms will carry over into the new statute.  And because it will be years before patents issue and begin to be litigated under the AIA, it will be a very long time before we can know for sure whether the scope of prior art is the same as it was before the AIA.

The problems don't even end there.  The definition of prior art includes not only terms like "public use" and "printed publication" but also a large number of judicially-created doctrines that refine the scope of prior art.  The inherency doctrine, for example, like the *Metallizing* rule, is not articulated expressly in either the old or new statute.  If the reenactment of the term "public use" opens the door to revisiting *Metallizing*, it also opens the door to revisiting inherency, which by definition isn't "available to the public."  The same is true of the experimental use exception to the on sale and public use bars.  That exception doesn't exist in the statute; it was created by the Supreme Court in the nineteenth century.[15]  But if the touchstone for the new meanings of public use and on sale is public availability, there is no reason to think those new terms should include an unarticulated exception for uses and sales that are public but nonetheless experimental. [16]

---

15. *Elizabeth v. Pavement Co.*, 97 U.S. 126, 137 (1877).

16. For a discussion of whether and under what circumstances experimental use survives the AIA, see Mark A. Lemley, *Ready for Patenting*, 96 B.U. L. Rev. __ (forthcoming                    2016),                    *available                    at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2613696.

Similarly, the rule that prior art must be enabling exists nowhere in the statute;[17] courts would be free to revisit that requirement and conclude that a public description of the invention was prior art whether or not it was enabling, so long as the publication was available to the public. And we might question the doctrine of double patenting,[18] which is similarly not articulated anywhere in § 102.

The PTO, patent applicants, and litigants would be much better served by leaving existing precedent interpreting unchanged statutory terms in place. The AIA creates enough uncertainty with a variety of new language. Concluding, as the district court did here, that we must revisit all our old decisions even where Congress chose to reenact old language would doom us all to decades of uncertainty as to the scope of prior art.

### B. The Terms "Public Use" and "On Sale" Have a Settled Meaning This Court Should Not Disturb

Because the terms "public use" and "on sale" have been in the patent statute since 1836, 5 Stat. 117 (1836), and have consistently been interpreted during that time to extend to secret commercial sales and uses, the relevant question is not simply "what does the term public use or on sale mean?" but "did Congress intend to change the settled meaning of those terms?" It is a well-established principle of

---

17. *In re Hafner,* 410 F.2d 1403, 1405 (C.C.P.A. 1969).

18. *In re Kaplan*, 789 F.2d 1574, 1578–79 (Fed. Cir. 1986); *In re* Vogel, 422 F.2d 438, 441–42 (C.C.P.A. 1970).

statutory interpretation that when Congress reenacts existing statutory language it is presumed to acquiesce in the way the courts have interpreted that language. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 21 (1999) ("'[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, [we] must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992))); *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense . . . ."); *GPX Int'l Tire Corp. v. United States,* 666 F.3d 732, 739 (Fed. Cir. 2011) (identifying Supreme Court cases that support this principle).  Indeed, the Supreme Court applied this principle to the Patent Act as recently as 2011, when it concluded that the phrase "a patent shall be presumed valid" in the 1952 Act required the application of a clear and convincing evidence standard because courts before 1952 had interpreted the presumption to be rebutted only with clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242, 2246 (2011).  So it is reasonable to apply a strong presumption that both "public use" and "on sale" mean the same thing in the AIA as they meant in the 1952 Act (or the Patent Act of 1870, for that matter).  "'[I]t is a cardinal rule of statutory construction that, when Congress employs a term of art,

it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it is taken.'" *Air Wis. Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 861–62 (2014) (quoting *FAA v. Cooper*, 132 S. Ct. 1441, 1449 (2012). This Court should ignore that rule only if there is simply no way to make sense of the statute otherwise. As we show in the next section, that is not true of "public use" and "on sale."

### C. So What *Does* "Otherwise Available to the Public" Mean?

It is most important to reverse the holding that "otherwise available to the public" implies a new publicness requirement for all categories of prior art. But this leaves the question of the proper interpretation of this phrase.

The best alternative would be to consider this a residual category meant to capture all publicly accessible prior art that does not fit into one of the other enumerated categories. For example, this residual category would cover a future technology which permits widespread public access but which may not be a "publication" or public "use." It might cover a situation where someone makes available a digital file that, when downloaded, prompts a 3-D printer to print out certain design. The file might not itself be a "publication"; and it may not be

"used" right away. But mere public availability would make it prior art as of the date it is first made available.[19]

In any event, even if it is not completely clear what the residual category covers, it is imperative not to read a new "publicness" element into all prior art categories. To do would be wildly out of step with the tradition of continuity in patent law, and would cause extreme uncertainty in the world of patent law. It is unnecessary and unwise, in light of the overall structure of AIA § 102. Given that the district court's reading of the phrase "or otherwise available to the public" is not the only plausible one, and given that the district court chose the interpretation that is at odds with the rest of the statute, the legislative history, and principles of statutory interpretation, as well having far more disruptive and radical effects, the best conclusion is that "public use" and "on sale" mean the same things they have always meant.

---

[19] Notably, cases under the 1952 Act already speak of prior art as being "reasonably accessible to the public." *Hall, supra*. But that is a term of art that does not exclude from the definition art either nominally accessible to the public but practically unlikely to be found or art that is the basis of internal commercial use for more than a year. In that context, adopting the language "accessible to the public" would seem to reflect Congressional intent to maintain that definition, not contradict it.

## **<u>CONCLUSION</u>**

The district court's interpretation of "on sale" under the AIA should be overturned.  The term should be construed to have the same meaning it had in the 1952 Patent Act.

Respectfully submitted,

/s/ Mark A. Lemley
Mark A. Lemley
Stanford Law School
559 Nathan Abbot Way
Stanford, CA 94305
(650) 723-4605
Mlemley@law.stanford.edu

ROBERT P. MERGES
BERKELEY LAW SCHOOL
UNIVERSITY OF CALIFORNIA
Berkeley, CA  94720
(510) 643-6199
rmerges@law.berkeley.edu

*Counsel for Amici Curiae*
*42 Intellectual Property Professors*

# APPENDIX A

# Appendix A
## List of Signatories[20]

Professor John R. Allison
McCombs Graduate School of Business
University of Texas at Austin

Professor Clark Asay
Brigham Young University Law School

Professor Margo A. Bagley
University of Virginia School of Law

Professor Ann Bartow
University of New Hampshire School of Law

Professor Jeremy Bock
University of Memphis Cecil Humphreys School of Law

Professor Dan L. Burk
University of California at Irvine School of Law

Professor Michael A. Carrier
Rutgers Law School

Professor Andrew Chin
University of North Carolina School of Law

Professor Ralph D. Clifford
University of Massachusetts School of Law

Professor Kevin Collins
Washington University Law School

Professor Christopher A. Cotropia
University of Richmond School of Law

---

[20]   The undersigned sign in their individual capacity.  Institutional names provided for affiliation purposes only.

Professor Thomas Cotter
University of Minnesota School of Law

Professor Robin Feldman
University of California Hastings College of the Law

Professor William Gallagher
Golden Gate University Law School

Professor Shubha Ghosh
University of Wisconsin School of Law

Professor Yaniv Heled
Georgia State University College of Law

Professor Timothy Holbrook
Emory University School of Law

Professor Camilla Hrdy
University of Akron School of Law (effective 6/16)
Fellow, University of Pennsylvania School of Law

Professor Dennis S. Karjala
Arizona State University Sandra Day O'Connor College of Law

Professor Dmitry Karshtedt
George Washington University Law School

Professor Amy L. Landers
Drexel University Thomas R. Kline School of Law

Professor Mark A. Lemley
Stanford Law School

Professor Lee Ann Lockridge
Louisiana State University Law School

Professor Brian J. Love
Santa Clara University School of Law

Professor Stephen McJohn
Suffolk University Law School

Professor Mark P. McKenna
Notre Dame Law School

Professor Robert P. Merges
Berkeley Law School

Professor Joseph Scott Miller
University of Georgia School of Law

Professor Mike Mireles
McGeorge School of Law

Professor Craig Allan Nard
Case Western Reserve University School of Law

Professor Tyler T. Ochoa
Santa Clara University School of Law

Professor David S. Olson
Boston College Law School

Professor Michael Risch
Villanova University Charles Widger Law School

Professor Sharon Sandeen
Mitchell Hamline School of Law

Professor Joshua D. Sarnoff
DePaul University College of Law

Professor Katherine J. Strandburg
New York University School of Law

Professor Kurt M. Saunders
California State University, Northridge School of Business

Professor Sean B. Seymore
Vanderbilt University Law School

Professor Ted Sichelman
University of San Diego School of Law

Professor Brenda Simon
Thomas Jefferson Law School

Professor David O. Taylor
SMU Dedman School of Law

Professor R. Polk Wagner
University of Pennsylvania School of Law

# United States Court of Appeals
## for the Federal Circuit

*Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA,* 16-1284

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MARK LEMLEY, counsel for *Amici Curiae*, 42 Intellectual Property Professors, to print this document. I am an employee of Counsel Press.

On **March 14, 2016** counsel has authorized me to electronically file the foregoing **BRIEF OF AMICI CURIAE 42 INTELLECTUAL PROPERTY PROFESSORS IN SUPPORT OF APPELLANT** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

George C. Lombardi
(principal counsel)
Julia M. Johnson
Tyler G. Johannes
Karl A. Leonard
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Il 60601
(312) 558-5600
glombardi@winston.com
jmjohnson@winston.com
tjohannes@winston.com
kaleonard@winston.com
Counsel for Appellants

Joseph M. O'Malley
(principal counsel)
Isaac S. Ashkenazi
Eric W. Dittmann
Young Jin Park
Paul Hastings LLP
75 East 55th Street
New York, NY 10022
212-318-6090
josephomalley@paulhastings.com
isaacashkenazi@paulhastings.com
ericdittmann@paulhastings.com
youngpark@paulhastings.com
Counsel for Appellees

Steffen N. Johnson
Jovial Wong
Andrew C. Nichols
Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006
(202) 282-5000
sjohnson@winston.com
JWong@winston.com
anichols@winston.com
Counsel for Appellants

Stephen B. Kinnaird
Paul Hastings LLP
875 15th Street, NW
Washington, DC 20005
202-551-1842
stephenkinnaird@paulhastings.com
Counsel for Appellees

Charles M. Lizza
Saul Ewing LLP
Suite1520
1037 Raymond Boulevard
Newark, NJ 07102
973-286-6700
clizza@saul.com
Counsel for Appellees

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.  Any counsel for *Amicus Curiae* appearing at the time of this filing will be served only via CM/ECF email notice.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

March 14, 2016

/s/ Elissa Matias
Counsel Press

# <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

  <u>X</u>   The brief contains <u>5,834</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6)

  <u>X</u>   The brief has been prepared in a proportionally spaced typeface using <u>M.S. Word 2013</u> in a <u>14</u> point <u>Times New Roman</u> font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

March 14, 2016                 <u>/s/ Mark A. Lemley</u>
                                     Mark A. Lemley
                                     Stanford Law School
                                     *Counsel for Amici Curiae*
                                     *42 Intellectual Property Professors*